IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CHUCKWUDI PERRY,               )
                               )
        Plaintiff,             )
                               )
            v.                 )
                               )     1:10cv167 (JCC)
DAVID J. KAPPOS,               )
Director of the U.S.           )
Patent and Trademark Office,   )
                               )
        Defendant.             )

**M E M O R A N D U M   O P I N I O N**

This case is before the Court on a Motion to Dismiss
Plaintiff Chuckwudi Perry's ("Plaintiff" or "Perry") Complaint
pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6) filed by David J. Kappos ("Defendant" or the
"Government").[1]  For the following reasons, the Court will deny
Defendant's Motion.

## I. Background

This case arises out of the termination of Plaintiff's
employment as a patent examiner with the United States Patent &
Trademark Office, an agency within the Department of Commerce
("USPTO" or the "Agency").  (Compl. ¶¶ 3, 9, 38.)  Plaintiff
alleges disability discrimination in violation of the

---

[1] When the briefs in this case were submitted, the case was improperly
captioned "Chuckwudi Perry v. Gary Locke."  [*See* Dkts. 6, 13, 14.]  Upon
motion of the Plaintiff, and by Order of the Court, the case caption has been
corrected to "Chuckwudi Perry v. David Kappos."  [Dkt. 15.]

Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("RA")

(Count One) and retaliation in violation of Title VII of the

Civil Rights Act, 42 U.S.C. § 2000e-3(a) ("Title VII") (Count

Two).

Plaintiff alleges that he has monocular vision

(blindness in one eye) and an "undiagnosed but continuing

degenerative eye disease" in his other eye.  (Compl. ¶ 46.)

Count One is premised on Plaintiff's contention that Defendant

failed to provide the "reasonable accommodation of a flexible

schedule," which he alleges would have allowed him to seek

treatment for his vision.  (Compl. ¶¶ 49-55.)  Count Two is

premised on Plaintiff's contention that his supervisor at the

USPTO "initiated a sequence of actions to attempt to justify Mr.

Perry's dismissal" in response to Perry filing "an informal

complaint of discrimination" regarding a disagreement he had

with the Human Resources Department at the USPTO.  (Compl.

¶¶ 61-64.)

In its Motion to Dismiss, the Government argues that

"the plaintiff, having failed and refused to carry out his

obligations in the administrative [discovery] phase of the

[United States Equal Employment Opportunity Commission ("EEOC")]

process, has failed to exhaust his administrative remedies;

[and] such exhaustion is a prerequisite to pursuit of this

action in this Court."  (Def.'s Memorandum in Support of its

Motion to Dismiss ("Mem.") at 1.)  The parties, however,

disagree sharply about Plaintiff's level of cooperation in the

administrative discovery phase of the EEOC process, and both

parties rely entirely on the exhibits to their briefs, rather

than the allegations in the Complaint, for factual support for

their arguments.

Plaintiff, assisted by counsel, initiated the EEOC

process on June 18, 2007.  (Mem. Ex. 1 (EEOC Counselor's Inquiry

Report) at 1.)[2]  The Plaintiff's formal complaint of

discrimination is dated August 2, 2007.  (Mem. Ex. 2 (Complaint

of Employment Discrimination).)  The formal complaint was

received by the USPTO's EEOC Officer on August 13, 2007, and it

was accepted for investigation in part and dismissed in part on

September 17, 2007.  (Mem. Ex. 3 (September 17, 2007 letter from

the USPTO's Office of Civil Rights to Plaintiff's then-attorney,

Morris E. Fisher, Esq.).)

Following USPTO's acceptance of the complaint,

Plaintiff was in contact with EEO investigator James Hubbard

("Hubbard"), a government contractor.  (*See* Mem. Ex. 4 (Report

of Investigation) at 1; Plaintiff's Opposition to Mem. ("Opp.")

Ex. A (Declaration of Chuckwudi Perry) ¶ 4.)  Plaintiff avers

---

[2] In ruling on a Federal Rule of Civil Procedure Rule 12(b)(1) Motion to
Dismiss, a District Court may "look beyond the jurisdictional allegations of
the complaint and view whatever evidence has been submitted on the issue to
determine whether in fact subject matter jurisdiction exists." *Virginia v.
United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

that, in October and November of 2007, he requested his "first counsel" to "coordinate a date on which [the attorney] could attend a meeting with Mr. Hubbard and [Plaintiff]." (Ex. 4 ¶ 5.) After the attorney failed to do so, Plaintiff avers that he fired the attorney and retained his second counsel, Lee Boothby ("Boothby"). (Opp. Ex. A ¶¶ 5-6.) Plaintiff further avers that, in December of 2007, Hubbard "changed direction" and asked Plaintiff to respond to "written questions" and the statements made in draft affidavits of three USPTO employees "in writing." (Opp. Ex. A ¶ 6.)

On January 10, 2008, having received no response from Plaintiff, Hubbard sent a letter to Boothby "reintroducing himself" and providing Plaintiff with a "list of interrogatories." (Reply Memorandum in Support of Def.'s Mot. to Dismiss ("Reply") Ex. 1 at 1.) Hubbard also emailed the letter and interrogatories to "leeboothby@aol.com" and "chuckp619@comcase.net."[3] (Reply Ex. 1 at 4.) Hubbard's letter asked that Boothby "please acknowledge receipt of [the] correspondence" and that Hubbard wished Boothby to have Perry "respond [to the letter] within 15 days of receipt." (Reply Ex. 1 at 1.) Additionally, the email to Boothby stated that Hubbard was "interested in having Mr. Perry respond to the Interrogatories attached to this correspondence within 15 days

---

[3] There is no evidence before the Court that would confirm or dispute that these email addresses are those of attorney Boothby or Plaintiff.

of receipt of e-mail; however, if [Plaintiff] is available to meet with [him] in person, please arrange a location and a specific date, and I will meet with him in your presence." (Reply Ex. 1 at 4.)  Boothby's office acknowledged receipt of the January 10, 2008 letter on January 14, 2008.  (Reply Ex. 1 at 3.)

After the fifteen days had elapsed, on February 1, 2008, Hubbard issued his "Report of Investigation."  (Mem. Ex. 4.)  At that time, Plaintiff had failed to "provide sworn testimony requested from him and his current [legal] representative Lee Boothby."  (Mem. Ex. 4 at 2.)  Hubbard drafted the Report of Investigation based on, among other things, documentary evidence obtained from the USPTO and the "sworn testimony" of the "identified [Responsible Management Officials]."  Plaintiff avers that he was not aware Hubbard was going to file his report on February 1; however, Perry makes no statement regarding the fifteen-day deadline imposed by Hubbard in his January 10, 2008 letter.  (Opp. Ex A ¶ 9.)  On February 5, 2008, Plaintiff submitted an "Affidavit" and "Rebuttal Statement" to Hubbard.  (Mem. Ex. 5 at 2; Opp. Ex. A ¶ 8.)  The Agency requested a Supplemental Report of Investigation to incorporate Plaintiff's February 5 submissions.  (Mem. Ex. 5 at 2.)  Hubbard filed this Supplemental Report on March 27, 2008. (Mem. Ex. 5 at 2.)

The Plaintiff sought a hearing before the EEOC, which appointed an Administrative Judge to hear and resolve the matter.  During the discovery period before the EEOC, Plaintiff refused to provide a complete and unredacted copy of his medical records, as requested by the USPTO's representative, even after being compelled to do so by the Administrative Judge.  (Mem. Ex 6 (April 1, 2009 Order of EEOC Administrative Judge Joel A. Kravetz) at 2.)  Instead, Plaintiff removed portions of his medical records which showed his physician's description of his cooperation as "poor" and redacted the name and address of one of his treating physicians.  (Mem. Ex. 6 at 2.)  These redactions came to light on October 17, 2008, when Plaintiff, the day before he was set to be deposed by an Agency representative, produced un-redacted versions of many of his medical records.  (Mem. Ex. 6 at 2.)  Plaintiff attributes these redactions to "his former counsel."  Plaintiff has further submitted a "corrected" version of the medical record to this Court, describing his cooperation as "normal."[4]  (Opp. Ex. A at ¶ 13.)

According to the findings of fact made by the Administrative Judge, after rescheduling Plaintiff's deposition several times to accommodate Plaintiff's failure to provide timely discovery responses, Plaintiff arrived late to his

_____

[4] This "former counsel" was Plaintiff's third attorney and was retained in July of 2008.  (Mem. Ex. 6 at 3.)

deposition and was "immediately combative when responding to questions." (Mem. Ex. 6 at 4.) The Administrative Judge also found that Plaintiff was "evasive" and displayed a "lack of cooperation." (Mem. Ex. 6 at 4.) Plaintiff, on advice of counsel, ultimately terminated the deposition prior to its conclusion. (Mem. Ex. 6 at 4.)

By an Order dated April 1, 2009, and as a sanction for "the documented transgressions both before and during the hearing process," Administrative Judge dismissed the Plaintiff's request for a hearing and directed the USPTO to issue a Final Agency Decision ("FAD"). (Mem. Ex. 6 at 7.) Following the dismissal of the hearing request, the USPTO issued an FAD denying the Plaintiff's claims. (Mem. Ex. 7 (November 27, 2009 Decision of the EEOC denying Plaintiff's appeal of the Agency's dismissal of his EEOC complaint) at 1.) The FAD found that the complaint failed to establish a *prima facie* case of race, color, disability and reprisal discrimination, and that management had articulated legitimate, nondiscriminatory reasons for its action, which the complaint failed to show were a pretext. (Mem. Ex. 7 at 2.) The Plaintiff appealed the FAD to the EEOC's Office of Federal Operations ("OFO") and, on November 27, 2009, the OFO affirmed the FAD. (Mem. Ex. 7 at 1.)

This Complaint followed on February 23, 2010. [Dkt. 1.] On April 21, 2010, Defendant moved to dismiss the Complaint

for Plaintiff's failure to exhaust administrative remedies based on his lack of cooperation during the administrative discovery process.  [Dkt. 6.]  Plaintiff opposed this Motion on May 4, 2010 [Dkt. 13] and Defendant filed his Reply on May 7, 2010 [Dkt. 14].  This Court heard argument on the Motion on June 11, 2010.  [Dkt. 16.]  Defendant's Motion is now before the Court.

## II. Standard of Review

Defendant's Motion seeks dismissal of Plaintiff's Complaint pursuant to both Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* Mot. at 1.)  The Fourth Circuit has held, however, that "failure by [a] plaintiff to exhaust [such] administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."  *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  This Court will address Defendant's Motion under the standards of Rule 12(b)(1).[5]

---

[5] In addition to the Fourth Circuit's direction, the Court also notes that Defendant's Memorandum in support of its Motion relies entirely on facts that formed no part of the Complaint.  Pursuant to Rule 12(d), if matters outside the pleadings are submitted in conjunction with, or in opposition to, a Rule 12(b)(6) motion, the court must either exclude such materials from consideration or convert the motion into a motion for summary judgment.  Fed. R. Civ. P. 12(d).  Neither party has asked this Court to convert this Motion to dismiss to one for summary judgment and Defendant's Motion and Memorandum offer no argument regarding dismissal under Rule 12(b)(6).

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways. First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In such instances, all facts alleged in the complaint are presumed to be true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995). Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994); *Velasco v. Government of Indonesia,* 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding

9

to one for summary judgment").  In either circumstance, the

burden of proving subject matter jurisdiction falls on the

plaintiff.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S.

178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio*

*Recovery Associates,* 682 F.Supp. 2d 560, 566 (holding that

"having filed this suit and thereby seeking to invoke the

jurisdiction of the Court, Plaintiff bears the burden of proving

that this Court has subject matter jurisdiction").  As the

Defendant's Memorandum does not rely on any of the facts alleged

in the Complaint, this Court assumes that Defendant refutes

Plaintiff's allegation that he has "exhausted all his

administrative remedies" and requests that this Court look

beyond the allegations of the Complaint to make its

determination.  *See Virginia*, 926 F. Supp. at 540; (Compl. ¶

43).

## III. Analysis

In order to bring a civil suit against the federal

government for Title VII violations, a federal employee-

plaintiff must first exhaust his administrative remedies.  *Brown*

*v. General Services Administration*, 425 U.S. 820, 835 (1976);

*Pueschel v. United States*, 369 F.3d 345, 353 (4th Cir. 2004).

Title VII exhaustion requirements apply to cases brought under

the RA.  *See* 29 U.S.C. § 794a(a)(1); *Spence v. Straw*, 54 F.3d

196, 199-202 (3d Cir. 1995); *Doe v. Garrett*, 903 F.2d 1455,

10

1458-62 (11th Cir. 1990); *Plowman v. Cheney*, 714 F. Supp. 196,

198 (E.D. Va. 1989) (adjudicating an RA claim and holding that

"among these Title VII remedies and procedures is an

administrative claims procedure that is a prerequisite for

seeking a judicial remedy").  As stated above, "[a] failure by

the plaintiff to exhaust administrative remedies concerning a

Title VII [and RA] claim deprives the federal courts of subject

matter jurisdiction over the claim."[6]  *Jones,* 551 F.3d at 301

(citing *Davis v. North Carolina Dep't of Corr.,* 48 F.3d 134,

138-40 (4th Cir. 1995) (holding that removal of Title VII action

was improper because plaintiff's failure to exhaust

administrative remedies deprived the federal courts of subject

matter jurisdiction)).  The exhaustion requirement "reflects a

congressional intent to use administrative conciliation as the

primary means of handling claims, thereby encouraging quicker,

less formal, and less expensive resolution of disputes."  *Chris

v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000).  The question upon

---

[6] The Fourth Circuit in *Jones* explicitly found that the case of *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385 (1982) is not to the contrary.  In *Zipes,* "the Court held only that the *un-timeliness* of an administrative charge does not affect federal jurisdiction over a Title VII claim, *see Zipes,* 455 U.S. at 393, and *Davis* noted that the holding in *Zipes* was so limited, *see Davis,* 48 F.3d at 140."  *Jones,* 551 F.3d at 301 n.2 (emphasis in the original). This is in accordance with the Fourth Circuit's opinion in *Edelman v. Lynchburg College*, 300 F.3d 400 (4th Cir. 2002), cited in Defendant's Reply. (Reply at 2 n.1.)  In *Edelman,* the Fourth Circuit, citing *Zipes*, found that the "exhaustion issue" was "in fact 'a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Edelman*, 300 F.3d at 404 (citing *Zipes*, 455 U.S. at 393).  In *Edelman*, as in *Zipes*, the "exhaustion issue" was one of timeliness; thus, the Fourth Circuit's *Jones* decision distinguishing *Zipes* applies equally to its holding in *Edelman*.

which Defendant's Motion turns therefore is whether or not

Plaintiff has sufficiently "exhausted" his administrative

remedies for this Court to have subject matter jurisdiction over

his Title VII and RA claims.  This Court finds that he has done

so.

Defendant argues, in essence, that Plaintiff's failure

to: (1) meet with the Agency investigator; (2) supply a sworn

statement to the investigator prior to the filing of his Report

of Investigation; (3) provide timely and complete copies of his

medical records and to promptly and completely comply with the

Administrative Judge's Order to compel such records; and (4)

complete his deposition testimony, amounts to a frustration of

the administrative process and constitutes a failure to "exhaust

his administrative remedies."  (Mem. at 7.)  The parties agree

that failure to participate in the administrative process may,

in some instances, preclude a finding that administrative

remedies have been exhausted.  (*See* Opp. at 6.)  What Plaintiff

does dispute is both the Defendant's characterization of

Plaintiff's cooperation during the administrative investigation

and the Defendant's argument that such failure as alleged would

constitute a failure to exhaust his remedies.

In support of its argument, Defendant first points to

the regulations governing the administrative complaint process.

(*See* Mem. at 5.)  These regulations mandate that a complainant,

along with the Agency and its employees, "shall produce such

documentary and testimonial evidence as the investigator deems

necessary." 29 C.F.R. § 1614.108(c)(1). This evidence, when it

includes statements by witnesses, "shall be made under oath or

affirmation, or alternatively, by written statement under

penalty of perjury." 29 C.F.R. § 1614.108(c)(2). These same

regulations require the Agency to "develop an impartial and

appropriate factual record upon which to make findings on the

claims raised by the written complaint. An appropriate factual

record is one that allows a reasonable fact finder to draw

conclusions as to whether discrimination occurred." 29 C.F.R.

§ 1614.108(c)(1). When a complainant fails to comply with these

discovery procedures, the Administrative Judge is authorized to

"issue a decision . . . in favor of the opposing party" and

"take such other actions as appropriate." 29 C.F.R.

§ 1614.109(f)(3)(iv)-(v).

Defendant argues that Plaintiff did not fully comply

with these regulations, and that such failure constitutes

exhaustion. (Mem. at 7.) Defendant relies primarily on two

cases in support of this argument. The first of these cases

involves a discrimination action brought by two African-American

employees at a naval facility. *Woodward v. Lehman*, 717 F.2d 909

(4th Cir. 1983). In *Woodward* after the plaintiffs initiated the

EEOC process, the Commanding Officer "requested the plaintiffs

13

to provide written statements with specific illustrations of the alleged discrimination" to ensure that there was an "act of discrimination" in the requisite thirty days immediately preceding the filing of the administrative complaint.[7] *Id.* at 912-914.  The plaintiffs in that case categorically refused to provide such details, independently stating that his or her "individual claim for racial discrimination is not based strictly on any single incident . . . but is rather based on the continuing discrimination against" him or her.  *Id*. at 914. After receiving this refusal, the Commanding Officer "cancelled the charges for a failure to prosecute for failure to comply with this request for specification [of the date the claim accrued]."  *Id.*  The Fourth Circuit in that case reversed the District Court's finding of exhaustion and, in so doing, found that "the plaintiff['s] refus[al] to provide such information [] thereby frustrated administrative review of the merits of their claims" and thus the District Court "should have granted defendant's motion to dismiss for failure to exhaust administrative remedies."  *Id.* at 915.

The second case on which Defendant primarily relies is the unpublished Fourth Circuit case of *Austin v. Winter*, 286 F.

---

[7] The regulation at issue in *Woodward* expressly requires that the agency may only consider a discrimination charge if the complaint "brought it to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days [of bringing the complaint]. . ."  29 C.F.R. § 1613.214(a)(1).

Appx. 31 (4th Cir. 2008). In *Austin*, after the plaintiff filed

a formal EEOC complaint, the defendant agency scheduled a fact

finding conference pursuant to 29 C.F.R. § 1614.108(b). *Austin*,

286 F. Appx. at 36. The plaintiff then contacted the agency and

stated that, while "she was not dropping the complaint, she

would not participate in the fact finding conference . . . ."

*Id.* at 34. The agency informed plaintiff that she had fifteen

days to notify the agency of her intentions regarding her EEOC

case or it would be dismissed; when she failed to respond, the

agency dismissed the case. *Id.* The Fourth Circuit found that

"though the [plaintiff] began the administrative process, the

process was not complete until [plaintiff] fully participated in

all required aspects of the investigation and the [agency] made

a final decision on her claim." *Id.* at 36. Furthermore, the

court held that "a 'complainant's failure to cooperate in the

administrative process precludes exhaustion when it prevents the

agency from making a determination on the merits." *Id.* (citing

*Jasch v. Potter,* 302 F.3d 1092, 1094 (9th Cir. 2002)).

Defendant contends that Plaintiff's evasiveness and

lack of cooperation during the discovery process are analogous

to the failure to participate in the administrative process

displayed by the plaintiffs in *Woodward and Austin*.

Specifically, Defendant points to Plaintiff's failure to submit

to a formal interview; failure to supply a sworn statement;

"interference with the fact-finding purpose of the
administrative phase of the EEO[C] process" by withholding and
redacting his medical records; "unjustifiable refus[al] to
answer some questions" during his deposition; "evasiveness" in
responding in others; and his ultimate termination of the
deposition before its completion.  (Mem. at 7.)

The cases of *Austin* and *Woodward* are distinguishable
from the case at bar.  The Fourth Circuit in *Austin* offered a
limited holding, whereby a plaintiff's failure to participate in
the administrative process will only constitute failure to
exhaust administrative remedies if it "prevent[ed] the agency
from making a determination on the merits."  *Austin*, 286 Fed.
Appx. at 36 (citing *Jasch*, 302 F.3d at 1094).  Similarly,
*Woodward* is limited to situations where "the complainant has
failed, after due opportunity, to supply the agency with
information sufficiently specific to enable it to conduct
meaningful investigation and to determine whether the complaint
satisfies the other regulations."  *Woodward*, 717 F.2d at 916.

In this case, the Administrative Judge imposed a
sanction on Plaintiff for his lack of cooperation during
administrative discovery by dismissing Plaintiff's hearing
request and remanding his claim to the Agency for "a Final
Agency Decision consistent with 29 C.F.R. § 1614.110 based on
the record as supplemented through the hearing process."  (Mem.

16

Ex. 6 at 7.)  Here, Plaintiff's conduct frustrated and slowed

the investigation of his EEO complaint, yet it did not prevent

the USPTO from making a determination on the merits.

Furthermore, Plaintiff appealed the USPTO's decision and the

EEOC denied his appeal and upheld the FAD, finding that "the

complaint failed to establish a *prima facie* case of race, color,

disability and reprisal discrimination, [and] management

articulated legitimate, nondiscriminatory reasons for its action

which complaint failed to show were a pretext."  (Mem. Ex. 7 at

2.)  The Plaintiff's case can be further distinguished from

*Woodward* and A*ustin*, as the plaintiffs in those cases formally

refused to participate in the discovery process, were given a

definitive deadline by which to comply or have their case

dismissed, and in neither case did the relevant agency reach a

FAD.  In the instant case, a decision on the merits was reached,

appealed, and upheld, leaving Plaintiff no additional

administrative recourse and exhausting his administrative

remedies.[8]

---

[8] Additionally, the Plaintiff argues that the regulations in place governing
the administrative discovery process, 29 C.F.R. § 1614.108, provide for
various penalties for failing to comply and that "the regulations simply do
not provide for the penalty that the Government seeks: to divest [Plaintiff]
of his right to proceed in federal court."  (Opp. at 11); s*ee* 29 C.F.R. §
1614.108(c)(3).  The Administrative Judge sanctioned Plaintiff as a result of
his discovery failures by dismissing his hearing request, the USPTO issued a
decision based on the merits of Plaintiff's claim, and the EEOC considered
and denied his appeal of that decision.  Plaintiff argues that, based on the
completed administrative disposition, the Court cannot find that Plaintiff

## IV. Conclusion

For these reasons, the Court will deny Defendant's

Motion to Dismiss.   An appropriate Order will issue.


|                      | <u>      /s/      </u>              |
|----------------------|-------------------------------------|
| June 28, 2010        | James C. Cacheris                   |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE  |

---

failed to exhaust his administrative remedies.  The Court does not reach
these arguments.